UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL C.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00898-TPK

OPINION AND ORDER

## OPINION AND ORDER

    This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for social security disability benefits. That final decision was issued by the Appeals Council on September 19, 2022. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 7) and the Commissioner filed a similar motion (Doc. 9). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    Plaintiff protectively applied for social security disability benefits on July 21, 2020, alleging that he became disabled on April 28, 2016. After initial administrative denials of his claim, Plaintiff appeared at a hearing before an Administrative Law on September 10, 2021. Both Plaintiff and a vocational expert, Tanya M. Edghill, testified at the hearing.

    The ALJ issued an unfavorable decision on September 29, 2021. He found, first, that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2021, and that he had not engaged in substantial gainful activity since his alleged onset date. Next, the ALJ determined that Plaintiff suffered from severe impairments including cervical, thoracic, and lumbar degenerative disc disease, derangement, labral tear, bursitis, a bilateral hip impairment, and obesity. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the ability to perform a limited range of sedentary work. He could not sit or stand for more than two hours continuously, although he could sit for up to six hours during a workday, and he needed breaks of 15 minutes in the morning and afternoon and a half-hour midday break. He also could not operate foot controls or climb ladders, ropes, or scaffolds, and

he could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Finally, he could frequently reach, handle, and finger, but could only occasionally reach overhead.

The ALJ found that with these limitations, Plaintiff could not do his past relevant work as a service technician. However, based on the vocational testimony, he determined that Plaintiff could perform sedentary jobs such as order clerk, assembler, and document preparer. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises this issue:

The Commissioner's determination is not supported by substantial evidence and is based on errors of law and fact.

Plaintiff's memorandum, Doc. 7-1, at 14.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 34 years old at the time of the hearing, first testified that he lived in a house with his wife and five-year-old son. His wife worked, and he cared for his son during the day with some help from family members. He said he did little to no housework and did not exercise, but he was able to use a riding lawn mower. On most days, he listened to the radio and switched positions between sitting and lying down. He could drive to the store occasionally but usually his wife did the driving.

When asked about his medical problems, Plaintiff said that he had neck pain radiating into his head, arms, and hands, and that he also had constant low back pain. It had radiated into his leg all the way to the top of his foot. He also testified to having foot cramps at night. Plaintiff experienced hip pain as well. He did get some relief from an epidural injection. The pain stopped him from engaging in almost all activities including prolonged walking and sitting. He had undergone surgery on his left hip and right hip surgery had been recommended. Lastly, Plaintiff testified that his back condition had gotten progressively worse and that he was also having problems with his hands, including pain and cramping.

The vocational expert, Ms. Edghill, first testified that Plaintiff's past work was as an HVAC service technician, which is a medium job; as a security guard, a light job; as a general service auto technician, a heavy job; and as a salesperson in nursery products, a light job. The two light jobs could be performed by a person who could work at that exertional level with some manipulative restrictions. She further testified that if the person were limited to sedentary work, he or she could do jobs like order clerk, assembler, and document preparer, and she gave numbers for those jobs as they existed in the national economy. None of those jobs involved

more than occasional overhead reaching.  Ms. Edghill also said that if the person could not walk or stand for more than two hours at one time, those jobs would still be available.  However, that would not be true if the person were limited to occasional, rather than frequent, reaching, handling, and fingering.

### B.  Medical Evidence

The pertinent medical records show the following.  On August 1, 2017, Plaintiff saw Dr. Sofat for a complete physical examination.  He reported on and off hip right hip pain but no other ailment of significance.  He was encouraged to walk and exercise as tolerated.  A physical done the next year was essentially the same.

An MRI study of Plaintiff's right hip was done in November, 2020.  The impressions included a suspected subtle labral tear and a suspected subtle greater trochanteric bursitis.  The following month, a neurosurgeon recommended an epidural steroid injection at L4-5.  Plaintiff also reported at that time that his symptoms had gotten worse since 2019.  The note indicated that range of motion studies increased the pain in his spine.  Also in 2020, Plaintiff was evaluated for his hip pain by Dr. Huckell.  Studies done at that time did not show any abnormalities in the right hip.  Plaintiff was diagnosed with bilateral hip derangement and was described as having a moderate degree of disability with respect to the left hip.  A follow-up report made in February, 2021 indicated that Plaintiff was comfortable with his left hip but still having problems with his right hip.  He was awaiting the recommended injection and demonstrated mild motion limitations with the hip.  A later record indicates that the injection, which was administered in March, 2021, relieved his symptoms for several months, and another injection was recommended.

Plaintiff also submitted medical evidence after the ALJ issued his decision.  That evidence will be discussed more fully below in connection with Plaintiff's argument that a remand to consider that new evidence is warranted.

### C.  Opinion Evidence

Dr. Miller conducted a consultative internal medicine examination on March 22, 2016.  Plaintiff's complaints at that time were chronic neck, hip, and back pain as well as headaches.  His problems began as a result of a motor vehicle accident some years before.  He underwent left hip resurfacing in 2013.  On examination, his gait was normal and he could walk on heels and toes without difficulty, squat, and get on and off the examination table without assistance.  There were few limitations in his range of motion and straight leg raising was negative.  His hand and finger dexterity were also intact.  Dr. Miller diagnosed chronic neck and low back pain, bilateral hip pain, and headaches, and thought any work-related limitations were mild.  (Tr. 404-07).

On July 16, 2020, Pinnacle Orthopedic and Spine Specialists prepared a report for the Workers' Compensation Board based on a telemedicine clinical assessment.  At that time, Plaintiff reported pain in his neck, mid back, and low back all stemming from a workplace injury

which happened in 2011.  He was not receiving any treatment for those conditions at that time but wanted to resume chiropractic care.  Studies showed some straightening and scoliosis of the spine as well as a disc herniation at L4-5 and some degenerative changes.  There was also a mild disc bulge at C6-7.  He was determined to have a permanent partial disability of 37.5% and chiropractic care was recommended.  As far as work was concerned, Plaintiff was advised to avoid certain repetitive motions, not to lift anything over 50 pounds, and to avoid sitting or walking for more than two hours at a time.  (Tr. 439-45).  The same findings appear in an earlier report from the same provider.  (Tr. 447-53).

Another consultative examination, this one performed by Dr. Dave, occurred on August 24, 2020.  Plaintiff told her that his back pain suddenly worsened in 2019.  He also reported that the chiropractic care did not help.  On examination, his gait and stance were normal and he could walk on his toes without difficulty.  He did have some limitations on the range of motion of his spine and straight leg raising was positive on the right.  He was diagnosed with, among other things, low back pain and neck pain, and Dr. Dave thought that Plaintiff had moderate to marked limitations for repetitive bending and gross motor manipulation of the right leg, as well as moderate limitations on standing and walking and moderate to marked limitations for heavy lifting and carrying.  (Tr. 470-74).

There are also opinions from state agency reviewers.  Dr. Shukla concluded in 2016 that Plaintiff was limited to light work with a number of postural limitations.  (Tr. 409-14).  Dr. Lawrence, who reviewed the record in 2020, thought that Plaintiff could do sedentary work with some postural limitations as well.  (Tr. 158-59).  Finally, Dr. Brauer limited Plaintiff to light work with the occasional ability to climb ladders, ropes, and scaffolds and to stoop.  (Tr. 173-76).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even

> more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Manipulative Limitations

Plaintiff argues, first, that the record does not support that portion of the ALJ's residual functional capacity finding concerning reaching, handling, and fingering.  He notes that both his testimony and his report of symptoms to his doctors indicate significant limits in his ability to use his arms and hands, and Dr. Dave's consultative examination showed some abnormalities in the right hand and forearm.  Plaintiff faults the ALJ for adding specific manipulative limitations which the ALJ believed to be present based on the diagnosis of degenerative disc disease of the cervical spine without relying on any opinion evidence about the extent of those limitations.  The Commissioner responds that the ALJ acted reasonably in imposing some manipulative limitations based largely on Plaintiff's own testimony even though no doctor had said such limitations existed, and that it is not error to find a claimant to be more limited functionally than any of the medical experts believed him to be.

The ALJ discussed both reaching and manipulative limitations in his decision.  As to reaching, he noted that the Pinnacle report limited Plaintiff to no more than two hours of overhead work at one time.  Then, in discussing the opinions of the state agency reviewers, which he found to be partially persuasive, he said this:

> Overall, the opinions are well supported with citations to the record. The opinions do not go quite far enough exertionally (I have limited the claimant to sedentary work, and proscribed the operation of foot controls taking into account the opinion at the most recent consultative examination) or posturally in B5A or B7A(I have included greater postural limitations here then certain of the opinions), and they do not include manipulative limitations at all despite the cervical component of the claimant's DDS (I have included appropriate manipulative limitations here).

(Tr. 32).  It is this latter statement which Plaintiff asserts is unsupported by the record and represents an instance of the ALJ's improper lay interpretation of the medical evidence.

In the Court's view, it is only the rare case when an ALJ errs by imposing limitations that

-5-

are more favorable to the claimant than the medical opinions suggest. Here, the ALJ would have acted well within his discretion by finding that Plaintiff did not have any restrictions in his ability to finger, handle, or feel, because that is what all of the examining, consultative, and reviewing physicians concluded. Adding those limitations did not prejudice Plaintiff. And there is authority for the proposition that they are consistent with the record.

This Court dealt with a similar issue recently in *Robert L. v. Comm'r of Soc. Sec.*, 2023 WL 5037925 (W.D.N.Y. Aug. 8, 2023). As here, the Court noted that "the limitations in the RFC were equal to or greater than those suggested in the opinion evidence." *Id*. at *4. That included the fact that one of the consultants concluded that the claimant had no manipulative limitations and there were no other opinions on that subject. The ALJ, however, noting that the claimant had been diagnosed with carpal tunnel syndrome, determined that he could only frequently finger, feel, and handle. The Court, after acknowledging the case law holding that "an RFC does not need to 'perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision,' *Matta* [*v. Astrue*], 508 F. App'x [53,] 56 [(2d Cir. 2013)]," *id*. at *5, upheld that determination as within the ALJ's province and as consistent with the record. The Court also noted that the claimant's "argument fails because he does not offer any evidence suggesting that he cannot do what the RFC says he can." *Id*. All of those things can also be said of this case, and for the same reasons, the Court rejects Plaintiff's first claim of error.

### B. New and Material Evidence

Plaintiff's other argument is that the case should be remanded for consideration of additional evidence which he submitted to the Appeals Council. In particular, he notes that there is evidence of his bilateral hand limitations within the additional records. Plaintiff, according to an August 25, 2021 treatment record, had been reporting problems with pain and numbness in his hands for several years increasing with use of the hands. He was subsequently diagnosed with carpal tunnel syndrome and underwent surgery in June of 2022 for that condition as well as for right ring and small finger trigger finger syndrome. Plaintiff contends that this evidence qualifies as both new and material because it did not exist at the time of the ALJ's decision (or at least some of it did not), and because it is likely that consideration of this evidence would have led the ALJ to impose greater manipulative restrictions which would have been inconsistent with the ability to perform those jobs identified by the vocational expert. According to the Commissioner, however, this evidence not only post-dated the expiration of Plaintiff's insured status but it did not shed light on his condition prior to that time, making it unlikely that, had it been considered, a different outcome would have resulted.

Plaintiff is seeking a remand order under 42 U.S.C. §405(g), sentence six. As this Court said in *Wilbon v. Colvin*, 2016 WL 5402702, at *3 (W.D.N.Y. Sept. 28, 2016),

> Pursuant to 42 U.S.C. § 405(g), a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding." In *Tirado v. Bowen*, 842 F.2d 595, 597 (1988), the Second Circuit elaborated on this language and held that a claimant seeking remand for consideration of additional evidence must satisfy a three-part test. First, the claimant must show that the proffered evidence is "new and not merely cumulative of what is already in the record." *Id*. Second, the claimant must show that the evidence is "material." *Id*. In this context, the concept of materiality requires both that the evidence is relevant to the time period for which benefits were denied and that there is a reasonable possibility that the evidence would have affected the outcome of the claimant's application. *Id*. Third, the claimant must show "good cause" for failing to present the evidence earlier. *Id*.

The key question in this case is whether the evidence proffered by Plaintiff satisfies the materiality standard as set forth above. As noted, the first record which Plaintiff relies on is an August 25, 2021 note from Oak Orchard Health in which Plaintiff reported that his hands had been hurting for one to two years. He had been taking naproxen for that condition and wondered if he had arthritis. Examination showed full range of motion of the hands, fingers, and wrists, although there was a positive Tinel's sign on the left (which may be indicative of carpal tunnel syndrome). Plaintiff did not want to undergo an EMG at that time. At a follow-up appointment on September 27, 2021, Plaintiff said he continued to have bilateral hand pain, and he had a positive Tinel's sign bilaterally. In December, 2021, Plaintiff returned for another examination, indicating that another provider had confirmed the existence of carpal tunnel syndrome and that he was planning to have surgery. The diagnosis of carpal tunnel syndrome was made by Dr. Hilburger in November, 2021 based on results of an EMG study. The surgery on his right hand occurred in June of 2022.

Other than Plaintiff's subjective report of problems with his hands dating back before the expiration of his insured status on June 30, 2021, there is nothing in the record indicating limitations in handling, feeling, or fingering during that time period, all as discussed above. The new records contain no medical opinion as to when carpal tunnel syndrom first presented, and, more significantly, none of them describe the extent of any functional limitations either prior to June 30, 2021, or thereafter, except for the note indicating normal range of motion of the hands, wrists, and fingers. Even if it can be inferred that, prior to June 30, 2021, Plaintiff suffered from some level of carpal tunnel syndrome in at least his left hand (he did not have a positive Tinel's sign on the right side when first examined at Oak Orchard Health), there is nothing suggesting that it caused limitations in the use of that hand which were any more severe than those already found by the ALJ. The Court concludes that this additional evidence, although new, does not rise to the level of materiality needed to support a sentence six remand, and therefore determines that this second claim of error lacks merit.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

                                        **/s/ Terence P. Kemp**
                                        **United States Magistrate Judge**